UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OMAR BARRAZA,

    Plaintiff,

v.

HOUSING AUTHORITY OF THE CITY OF SEATTLE,

    Defendant.

No. C05-1184P

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    This matter comes before the Court on a motion for summary judgment by Defendant Housing Authority of the City of Seattle, also known as "Seattle Housing Authority" or "SHA." (Dkt. No. 30). Having reviewed the parties' submissions and finding that oral argument is not necessary for the disposition of this motion, the Court hereby DENIES Defendant's motion because genuine issues of material fact exist for trial. The Court further DENIES Plaintiff's request for partial summary judgment as untimely. The reasons for the Court's order are set forth below.

**Background**

    Plaintiff Omar Barraza is a former employee of SHA. His only remaining claim in this action is for retaliation under the federal False Claims Act (FCA). Plaintiff started working for SHA in 1997. In the fall of 2000, he was promoted to the position of occupancy manager for an

ORDER - 1

organization within SHA called "PorchLight," a position that he held until his termination a year later. PorchLight was directed by Kathy Roseth, who served as Plaintiff's supervisor.

SHA administers "Section 8" housing benefits in the Seattle area for the U.S. Department of Housing and Urban Development (HUD).  The Section 8 program provides federal housing subsidies in the form of vouchers to low-income families.  The SHA administered a HUD program known as the "Welfare to Work" (WtW) program.  Among other things, a family had to be on the Section 8 "wait list" to be eligible for benefits under the WtW program.

Plaintiff alleges that in May 2001, Ms. Roseth instructed another SHA employee to issue WtW vouchers to about 30 families that had been referred to SHA by the Fremont Public Association (FPA).  Because some of the families referred by the FPA were not on the Section 8 wait list, Plaintiff asserts that they were not eligible for the WtW program.  Plaintiff alleges that he confronted Ms. Roseth about this issue and that she "admitted it."  Plaintiff states that he had Ms. Roseth sign a memo that directed him to issue the WtW vouchers to the families referred by the FPA.

On August 6, 2001, Plaintiff met with Charles Hiyashi, SHA's human resources director. Plaintiff alleges that he raised multiple complaints at this meeting, including the WtW voucher incident regarding the FPA referrals who were not on the Section 8 wait list.  On August 7, 2001, Plaintiff gave Mr. Hiyashi a letter listing his complaints.  The letter largely complained about Ms. Roseth's management style and allegations of discrimination, without mentioning the WtW voucher incident. However, the letter included a general allegation that Ms. Roseth "intimidated, interfered and coerced my colleagues and I from ensuring the compliance of SHA with HUD . . . obligations," requested the appointment of an outside independent investigator, and requested that SHA "provide me an escort to obtain work product for identification and for the securing of evidence directly relevant to verification of these allegations."

Plaintiff alleges that Mr. Hiyashi told him to be more specific about the FPA referral incident. Plaintiff wrote a supplement titled "additional allegations," which alleged "[t]hirty Section 8 vouchers

ORDER - 2

were allocated to Fremont Public Association in June of 2001 without competition." Plaintiff claims that by "without competition," he meant that they were issued to people who did not qualify for a WtW voucher because they were not on the Section 8 wait list. On August 9, 2001, Plaintiff submitted a revised complaint, which included a section titled "Misappropriation of SHA Section 8 Resources" and repeated his complaint about the FPA referral incident.

On August 21, 2001, Plaintiff met with SHA's general counsel, where Plaintiff was allegedly told that they needed to discuss the termination of his employment. In his complaint in this matter, Plaintiff maintained that he was terminated on or about September 7, 2001. Following a hearing, Plaintiff's termination was final on October 16, 2001.

On September 12, 2001, Plaintiff sent a complaint to HUD's Office of Inspector General. The complaint raised many issues he had previously raised with the SHA, as well as a number of additional allegations. According to Plaintiff, HUD conducted an investigation based on his complaint and issued an audit report on May 29, 2003. Among other things, the report concluded that the SHA improperly issued WtW vouchers to at least 19 families that had been referred by the FPA because the families were not on the Section 8 wait list. HUD recommended that SHA be required to "[r]eimburse WtW program funds used to assist Fremont Public Association's . . . clients."

**Analysis**

Plaintiff is suing under the whistleblower protection provisions of the FCA. This section of the FCA ("Section 3730(h)") provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

ORDER - 3

1  An employee must prove three elements in a retaliation action under section 3730(h): "(1) that
2  the employee engaged in activity protected under the statute; (2) that the employer knew that the
3  employee engaged in protected activity; and (3) that the employer discriminated against the employee
4  because she engaged in protected activity." Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275
5  F.3d 838, 845 (9th Cir. 2002).

6  1.  Protected Activity

7  Section 3730(h) "only protects employees who have acted 'in furtherance of an action' under
8  the FCA." United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996). As a result,
9  "the plaintiff must be investigating matters which are calculated, or reasonably could lead, to a viable
10  FCA action." Id. Defendant argues that Plaintiff did not engage in protected activity because he did
11  not act "in furtherance of an action" under the FCA. Defendant contends that Plaintiff's complaints in
12  August 2001 focused on allegations such as employment discrimination, management issues, and non-
13  compliance with federal rules and regulations. Defendant notes that an FCA action must be based on
14  fraud against the federal government, and cannot be based solely on a failure to comply with federal
15  regulations. See, e.g., Hopper, 91 F.3d at 1267.

16  In response, Plaintiff argues that the term "protected activity should be interpreted broadly."
17  United States ex rel. Ackley v. IBM, 110 F. Supp.2d 395, 400 (D. Md. 2000). Plaintiff also notes that
18  under Ninth Circuit law, "an employee engages in protected activity where (1) the employee in good
19  faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that
20  the employer is possibly committing fraud against the government." Moore, 275 F.3d at 845. Plaintiff
21  also observes that an FCA claim may be based on false certification of compliance with government
22  regulations in order to receive government benefits. See Hopper, 91 F.3d at 1266. Here, Plaintiff
23  maintains that the SHA falsely certified its compliance with HUD rules regarding the WtW vouchers.

24  Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has
25  offered sufficient evidence to raise genuine issues of material fact on whether he engaged in "protected

ORDER - 4

activity" under the FCA. To be sure, Plaintiff's written complaints to SHA in August 2001 include a wide array of allegations, most of which cannot be regarded as allegations of fraud against the federal government. However, Plaintiff also alleged that SHA had improperly awarded WtW vouchers to families referred by the FPA. Plaintiff has offered evidence that at least some of these families were ineligible for WtW vouchers because they were not on the Section 8 wait list. Plaintiff has also stated that Kathy Roseth directed him to issue WtW vouchers to those families despite knowing that they were ineligible. Plaintiff also labeled one section of his revised complaint "misappropriation of SHA Section 8 resources," a term which may support an inference that he was alleging improper use of federal funds by SHA. Plaintiff also asked for an investigation regarding his allegations and to be allowed "to obtain work product for identification and for the securing of evidence directly relevant to verification of these allegations" – evidence which could support an inference that Plaintiff was pursuing an investigation of possible fraud by SHA. Therefore, the Court finds that the issue of whether Plaintiff engaged in "protected activity" under the FCA is a disputed question of fact that must go to the jury.

2.  <u>Employer's Knowledge of Protected Activity</u>

Under the FCA, "[a]n employee is entitled to whistle blower protection only if 'the employer is aware that the employee is investigating fraud.'" <u>Moore</u>, 275 F.3d at 846-47. SHA argues that Plaintiff cannot satisfy this requirement because his complaints from August 2001 focused on issues such as employment discrimination and mismanagement, which do not constitute fraud under the FCA. However, for reasons similar to those discussed above, the Court finds that Plaintiff has offered sufficient evidence to preclude summary judgment on the question of whether SHA knew Plaintiff was engaging in protected activity.

ORDER - 5

3.  <u>Discrimination Because of Protected Activity</u>

SHA also argues that Plaintiff cannot show a link between protected activity and his termination. SHA's argument on this issue largely depend on their argument that Plaintiff cannot show that he engaged in protected activity or that SHA knew of the protected activity. However, because Plaintiff was terminated shortly after he made his complaints to SHA, a reasonable juror could conclude that Plaintiff was terminated for engaging in protected activity under the FCA.

The parties also dispute whether Plaintiff can base his retaliation claim on the complaint he sent to HUD's Office of Inspector General (OIG) on September 12, 2001. Plaintiff argues that he can base a retaliation claim on this complaint because his termination was not final until October 16, 2001. However, Plaintiff stated in his letter to the HUD OIG that he had been fired on September 7, 2001. Plaintiff also alleged in his first amended complaint that SHA caused him to be terminated on or about September 7, 2001. As a result, Plaintiff's letter to the HUD OIG cannot be regarded as an action that caused his termination, since Plaintiff has maintained he was terminated before the letter was sent.

4.  <u>Motions to Strike</u>

Both parties have moved to strike evidence offered by the other side. The Court regards Plaintiff's motion to strike as moot because summary judgment would be inappropriate even if the Court were to consider the materials that he seeks to strike.

Defendant has moved to strike a significant amount of evidence offered by Plaintiff. For the most part, Defendant's objections are either contained in footnotes or are asserted in a cursory manner with no discussion. Defendant is advised that the Court gives little if any weight to arguments that a party only chooses to present in a footnote. In addition, Defendant's motions to strike generally do not concern evidence that is essential to the Court's disposition of this motion. Indeed, Plaintiff's August 2001 complaints to SHA (which Defendant has not moved to strike) would arguably suffice to raise genuine issues of material fact regarding Plaintiff's claim. As such, Defendant's motions to strike are largely moot. Nonetheless, the Court notes the following points regarding Defendant's objections:

ORDER - 6

1  **Personal Knowledge.** Defendant objects to many paragraphs of Plaintiff's declaration for lack
2  of personal knowledge. However, Plaintiff describes his employment history with SHA in paragraph 2
3  of his declaration and states that "[i]n these positions I became familiar with, and have personal
4  knowledge, of how SHA administered the United States Department of Housing and Urban
5  Development's (HUD's) benefits, all as set forth herein." Although Defendant argues that statement is
6  conclusory and is not consistent with Plaintiff's testimony regarding the areas of his responsibility,
7  Plaintiff worked for SHA for four years and could reasonably be expected to have personal knowledge
8  regarding SHA's administration of HUD benefits, including knowledge regarding certification
9  requirements to HUD. See, e.g., In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal
10 knowledge may be inferred from a declarant's position"). As such, Defendant's cursory objections for
11 lack of personal knowledge (e.g., objections to paragraphs 7, 8, 16, 17, 39, 40, 41, 42, 43, 44, and 45
12 and Exhibit 8 to Plaintiff's declaration) are not well-taken.

13 **Hearsay**. Defendant also raises a number of hearsay objections. Hearsay in a declaration may
14 be considered for summary judgment purposes if it could be presented in an admissible form at trial.
15 Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 846 (9th Cir. 2004); see also Fraser v.
16 Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). Here, Plaintiff could testify at trial regarding the facts
17 alleged in his declaration and in his notes from meetings with SHA officials. Defendant has also raised
18 hearsay objections to certain paragraphs of Plaintiff's declaration that describe what he was allegedly
19 told by Ms. Roseth or the SHA. Such statements are not hearsay because they are admissions of a
20 party opponent. In addition, Defendant has raised hearsay objections to documents that plainly fall
21 within the public records exception to the hearsay rule. Therefore, Defendant's objections to
22 paragraphs 8, 12, 14, 15, 17, 18, and 29 and to exhibits 1, 5, and 8 to Plaintiff's declaration on hearsay
23 grounds are not well-taken.

24 **Best evidence**. Defendant raises a "best evidence" objection to paragraph 12 of Plaintiff's
25 declaration, in which he states that he has seen SHA's 1999-2000 administrative plan to administer the

ORDER - 7

1  Section 8 program and describes provisions of the plan. Defendant objects that "Plaintiff's
2  recollection of that alleged plan is not the best evidence of the plan." However, SHA presumably has
3  the original of its 1999-2000 administrative plan. FRE 1004(3) provides that the best evidence rule
4  does not apply when the original of a document is in possession of the opponent, the opponent is put
5  on notice that the contents of the document would be a subject of proof at the hearing, and the
6  opponent does not produce the original at the hearing.

7  **HUD Audit Report.** In paragraph 39 of his declaration, Plaintiff discusses the HUD audit
8  report from May 2003 and attaches a copy of the report as Exhibit 12.[1]  Defendant suggests that the
9  audit report is not admissible as a public record under FRE 803(8) because it "does not contain factual
10 information; rather, it reports hearsay within hearsay as part of an investigation and the conclusions
11 reached based upon that hearsay information." Defendant's contention that the report "does not
12 contain factual information" is not well-taken. In addition, investigatory reports that state opinions or
13 conclusions based on a factual investigation are admissible under FRE 803(8). See Beech Aircraft
14 Corp. v. Rainey, 488 U.S. 153, 170 (1988).

15 **Other Objections**. The Court does not regard Defendant's remaining objections to Plaintiff's
16 exhibits or declaration to concern evidence that is essential to the disposition of this motion.

17 4.      Remaining Issues

18      In a footnote in its reply brief, Defendant suggests that Plaintiff's FCA claim should be
19 dismissed on statute of limitations grounds. Because this argument was not raised in the opening brief
20 and Plaintiff has not had an opportunity to respond, the Court declines to consider it.

---

23 [1] Defendant notes that Plaintiff neglected to file a copy of this report in his electronic filing
24 with the Court. This appears to be a simple filing error on Plaintiff's part, since Plaintiff provided a
   copy of Exhibit 12 in working papers submitted to the Court. To ensure that the record is complete,
25 the Court will issue a minute order directing Plaintiff to file an electronic copy of Exhibit 12 with the
   Court.

ORDER - 8

In addition, Plaintiff asks in his opposition brief for the Court to issue partial summary judgment in his favor by holding: (1) that he engaged in protected activity; and (2) SHA was aware that he had engaged in protected activity. The Court denies this request as untimely because it was filed after the deadline for filing dispositive motions in this case.

## Conclusion

Consistent with the discussion above, the Court DENIES Defendant's motion for summary judgment because genuine issues of material fact exist for trial. The Court further DENIES Plaintiff's request for partial summary judgment as untimely.

The clerk is directed to send copies of this order to all counsel of record.

Dated:   June 15, 2006

                                          s/Marsha J. Pechman
                                          Marsha J. Pechman
                                          United States District Judge

ORDER - 9